# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION


AKSHAY M. DESAI,

     **Plaintiff,**

v.                              **Case No. 8:18-cv-1843-T-02AAS**[1]

NAVIGATORS INSURANCE COMPANY,

     **Defendant.**

_____/

## <u>ORDER</u>

     This matter comes before the Court on the parties' cross motions for summary judgment (Dkts. 49-50, 52), as well as their respective responses and replies (Dkts. 58-59, 62, 65). The Court also received briefing from *amicus curiae* (*see* Dkt. 41), the Florida Department of Financial Services (Dkts. 51, 60, 64), and heard oral argument from counsel for the parties and the *amicus curiae*. Upon consideration, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

---

[1] This case has been consolidated with the claims originally raised in Case No. 8:19-cv-984, *Desai v. Navigators Insurance Company, et al.* ("*Desai II*"). *See* Dkt. 55. This Order deals only with motions filed in the lead case, *Desai v. Navigators Insurance Company*, Case No. 8:18-cv-1843.

# I.    FACTUAL BACKGROUND[2]

## A.    Dr. Desai and the Universal Entities

Plaintiff Akshay M. Desai, M.D. ("Dr. Desai") is an officer and director of a number of companies, including parent company Universal Health Care Group, Inc. ("UHCG"), and subsidiaries Universal Health Care Insurance Company, Inc. ("UHCIC"), Universal Health Care, Inc. ("UHC"), and American Managed Care, LLC ("AMC").  Dkt. 52-1 ¶¶ 3-4 (Desai affidavit).  Dr. Desai had an employment agreement with UHCG.  Dkt. 52-4.  The agreement provided him with a base annual salary of $900,000 to serve as Chairman of the Board, Chief Executive Officer, and President of UHCG and each of its subsidiaries (that is, UHCIC, UHC, and AMC) and to be responsible for "the general management of the affairs of [UHCG] and its subsidiaries."  *Id.* at 2.  In 2012, Dr. Desai received $2,475,000 in bonus compensation, as well as $62,580 in other compensation.  Dkt. 52-1 ¶ 7.  The payments were made by AMC for services that Dr. Desai rendered under the employment contract.  *Id.*  The Board of Directors (of which Dr. Desai was the Chairman) approved the payments.  *Id.*; Dkt. 52-4 at 2.

---

[2] Although the parties disagree about the law, they largely agree about the material facts. To the extent there are disagreements, the Court takes the facts in the light most favorable to Dr. Desai.

B.    <u>Insurance Policies</u>

RSUI Indemnity Company ("RSUI") issued Directors and Officers Liability Policy No. HP648986 to UHCG effective November 1, 2012 to November 1, 2013 ("RSUI Policy"), affording $5 million in limits.  Dkt. 17-2.  Defendant Navigators Insurance Company ("Navigators") issued NAVEXCESS Policy No. PT12DOL301885NV for the same period ("Navigators Policy").  Dkt. 17-1 .  The Navigators Policy is a "follow form" excess policy under which the RSUI Policy is the designated "followed policy."[3]  *Id.* at 2.[4]  The Navigators Policy affords an additional $5 million in coverage after the limits of the RSUI Policy have been exhausted.[5]  *Id.*

The RSUI Policy (the terms of which are incorporated into the Navigators Policy, *see* Dkt. 17-2 at 2) states:

> [T]he Insurer agrees . . . [w]ith the Insured Person that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy

---

[3] A "follow form" policy provides coverage in conformance with the same terms, conditions, and exclusions as those set forth in the followed policy, except where specifically provided otherwise. *See, e.g., Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1308 (S.D. Fla. 2010);  *In re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1282 (N.D. Ala. 2004).

[4] Citations to this document are to the page numbers assigned when it was filed in CM/ECF.

[5] The parties disagree about the trigger for Navigators's liability under the Navigators Policy—that is, whether RSUI must have paid out $5 million or whether amounts paid by Dr. Desai and Navigators can supplement the amounts paid by RSUI and count toward the $5 million total.  *See, e.g.*, Dkt. 50 at 25; Dkt. 52 at 20.  That dispute is not material to the Court's resolution of the cross motions for summary judgment.  Thus, the Court assumes that, as Dr. Desai contends, Navigators can potentially be liable under the Navigators Policy even though it appears undisputed that RSUI has paid out only $4,532,322.30 under the RSUI policy for the claim at issue in this lawsuit.  Dkt. 50-6.

> Period and reported in accordance with SECTION V.—CONDITIONS,
> C. Notice of Claim or Circumstance of this policy, the Insurer will pay
> on behalf of such Insured Person all Loss such Insured Person is legally
> obligated to pay, except and to the extent that the Insured Organization is
> required or permitted to indemnify such Insured Persons.

Dkt. 17-2 at 23.[6] "Insured Person" means any "past, present or future director, officer, or Employee, management committee members or members of the Board of Managers" of UHCG and its subsidiaries. *Id.* at 1, 25. "Insured Organization" means UHCG and its subsidiaries. *Id.* at 1, 25. "Wrongful Act" means:

> any actual or alleged act, error, omission, misstatement, misleading
> statement, neglect or breach of duty . . . by:
>
> 1.    An Insured Person acting in his or her capacity as such and on
>        behalf of the Insured Organization or any matter claimed against
>        them solely by reason of their status as an Insured Person; or
>
> 2.    The Insured Organization.

*Id.* at 26. "Loss" means:

> damages (including back pay and front pay), settlements, judgments
> (including pre- and post-judgment interest on a covered judgment) and
> Defense Expenses.

*Id.* at 25. The policy also provides that "Loss (other than Defense Expenses) shall not include" a number of items, including "[m]atters that may be uninsurable under the law pursuant to which this policy shall be construed." *Id.*

---

[6] Citations to this document are to the page numbers assigned when the document was filed in CM/ECF. In addition, quotations from this policy omit the bold text occasionally used in the original policy.

The policy also includes a number of exclusions, including an exclusion for "Loss in connection with any Claim made against any Insured" that is

> [b]ased upon, arising out of or attributable to any remuneration received by an Insured, or the granting of any remuneration to any Insured, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any Insured in the Claim shall establish that such Insured received remuneration to which such Insured was not legally entitled.

*Id.* at 26 (the "Illegal Remuneration Exclusion"). There is also an exclusion for a loss that is

> [b]ased upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an Insured was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any Insured in the Claim shall establish that such Insured gained profit or advantage to which such Insured was not legally entitled.

*Id.* (the "Illegal Advantage Exclusion").

C.      Insolvency Proceedings and DFS's Claim

In February 2013, the Florida Department of Financial Services ("DFS") began receivership proceedings in the Circuit Court for the Second Judicial Circuit of Florida in and for Leon County against UHCIC and UHC (the "Receivership Entities") pursuant to Florida Statutes §§ 631.031 and 631.061.[7] Dkt. 52-1 ¶ 8. Soon

_____

[7] These statutory provisions are part of the Insurers Rehabilitation and Liquidation Act. *See* Fla. Stat. § 631.001(1).

after, UHCG and AMC filed for Chapter 11 bankruptcy protection. *Id.* ¶ 9. On March 22, 2013, the state court placed the Receivership Entities into receivership and appointed DFS as receiver. Dkt. 50-7.

Florida Statutes § 631.261(1)(b) makes certain transfers of the property of an insurer voidable:

> Any transfer of . . . the property of an insurer . . . which is made or created between 4 months and 1 year prior to the commencement of any delinquency proceeding under this chapter is void if such transfer . . . inured to the benefit of a director, officer, employee, stockholder, member . . . , or insider . . . .

Florida Statutes § 631.154(1), in turn, provides:

> If the receiver determines that funds, assets, or property in the possession of another person are rightfully the property of the estate, the receiver shall deliver to such person a written demand for immediate delivery of the funds, assets, or property to the receiver . . . . Any person who holds funds, assets, or other property belonging to an entity placed in receivership under this chapter shall deliver the funds, assets, or other property to the receiver on demand.

On April 4, 2013, DFS (as receiver for the Receivership Entities) sent Dr. Desai a letter invoking Fla. Stat. §§ 631.154(1) and 631.261(1)(b) and demanding the return of $2,537,580:

> As Receiver of UHCIC and UHC, the Department hereby demands the return of $2,537,580.00 received by you from the funds of UHCIC and/or UHC within one year of the Department's successful application for delinquency proceedings. According to the 2012 Supplemental Compensation Report filed by UHCIC, this amount consists of a "bonus" of $2,475,000.00 and "other compensation" in the amount of $62,580.00 . . . . Pursuant to section 631.261, Florida Statutes, the $2,537,580.00 which you received from UHCIC and/or UHC in 2012 is

a voidable transfer, which the Department, as Receiver of UHCIC and UHC, is entitled to recover.

Dkt. 50-8 at 1-3. This letter from DFS is the claim that is at the center of the dispute between the parties in this action (the claim is referred to as the "DFS Claw Back Claim" and the payment demanded is referred to as the "Claw Back Payment").

Dr. Desai contested the DFS Claw Back Claim in state court, but the state court granted summary judgment to DFS on July 6, 2017, and entered a "Summary Final Judgment," requiring Dr. Desai to pay DFS $2,537,580, plus interest. Dkt. 50-17 at 11 ("Accordingly, it is **ORDERED AND ADJUDGED** as follows: Akshay M. Desai, M.D., owes [DFS as Receiver of the Receivership Entities] $2,537,580, together with statutory interest . . . , *all for which let execution issue forthwith*." (emphasis in original)). The state court then entered a "Final Order on Award of Statutory Interest" upon the Summary Final Judgment amount. Dkt. 52-12. The final judgment is currently on appeal. Dkt. 52-1 ¶ 26. After being threatened with contempt (Dkt. 17-6), Dr. Desai paid $2,537,580 in personal funds to DFS, which funds are currently being held in the DFS's Special Purpose Interest Account pending his appeal (Dkt. 52-1 ¶ 27).

    D.    <u>Other Claims Against Dr. Desai, Settlement, and Navigators's Coverage Position</u>

Around the same time that DFS initiated the claim to recoup Dr. Desai's compensation, it also made claims against Dr. Desai and other insured individuals

seeking damages of at least $15 million for alleged breaches of fiduciary duties in the management of the Receivership Entities (the "DFS Fiduciary Duty Claims").  Dkt. 52-1 ¶¶ 11-12; Dkt. 52-6.  The trustee of the bankruptcy estates of UHCG and AMC ("Trustee") also made claims against Dr. Desai and others in bankruptcy court based on alleged wrongful acts (the "Trustee Claims").  Dkt. 52-1 ¶ 14; Dkt. 52-8; *see also In re Universal Health Care Grp., Inc.*, No. 8:13-bk-01520-KRM, Dkt. 182 (Bankr. M.D. Fla. Apr. 3, 2013).[8]

Dr. Desai sought coverage for the DFS Claw Back Claim (and other matters) from RSUI.  RSUI initially provided Dr. Desai with a defense subject to a reservation of rights; however, it disputed coverage and filed a declaratory judgment action against Dr. Desai and others.  Dkt. 52-1 ¶ 28; *see also RSUI Indem. Co. v. Desai*, No. 8:13-cv-02629-30TGW, Dkt. 1 (M.D. Fla. Oct. 11, 2013).

---

[8] Separately, a group of minority shareholders in UHCG filed a lawsuit against Dr. Desai and the other majority shareholders of UHCG alleging damages "arising from fraud, misrepresentation, material omissions, fraudulent concealments, breaches of fiduciary duty and other misconduct." *Desai II*, No. 8:19-cv-984, Dkt. 1-8 at 7 (CM/ECF pagination) (the "*DeFosset* action").  The plaintiffs in the *DeFosset* action allege, among other things, that Dr. Desai operated UHCG "without proper internal controls," that he transferred cash from UHCG "to familiar or other insider-type persons," that he entered into transactions "saddled with conflicts," and that he took "[s]tubborn and unreasonable positions." *Id.* at 19.  The plaintiffs also allege that Dr. Desai represented in materials for a "Friends and Family" stock offering that UHCG had a value of approximately $500 million when the true value was, at best, a fraction of that and UHCG was only weeks away from recognizing that it was in the zone of insolvency. *Id.* at 20.  Dr. Desai filed a lawsuit in state court seeking, among other things, a declaration that the Navigators Policy requires Navigators to indemnify and defend Dr. Desai in the *DeFosset* action.  *Desai II*, Dkts. 1-7 and 1-8.  That action was removed to this Court and has been consolidated with this action.  Dkt. 55.  Navigators filed a motion to dismiss in that action, which is currently pending.  The Court will rule on that motion by separate Order.

In the meantime, DFS and the Trustee notified Navigators of the various claims against Dr. Desai (including the DFS Claw Back Claim) no later than January 16, 2014.  Dkt. 52-6 (DFS Fiduciary Duty Claims); Dkt. 52-7 at 2 (DFS Claw Back Claim); Dkt. 52-8 (Trustee Claim).  On February 13, 2017, Navigators, DFS, the Trustee, and others entered into a settlement agreement.  Dkt. 52-10.  Navigators paid $1.8 million in exchange for an agreement that DFS and the Trustee would not seek any recovery from Navigators for any judgment against Dr. Desai.  *Id.* at 1, 5-6; Dkt. 50-12 at 6.  Although Dr. Desai did not participate in the settlement, Navigators obtained a release of all claims against Dr. Desai that were "subject to indemnification as a 'Loss' under" the RSUI Policy and/or the Navigators Policy, leaving DFS free to pursue any claims against Dr. Desai that were not covered by those policies.  Dkt. 52-10 at 5-6.

Although the current dispute between the parties does not directly involve the settlement, the settlement has potential implications for both this case and the state court action on the DFS Claw Back Claim, as discussed more fully below.  Briefly, Navigators and DFS take the position that the Navigators Policy and, thus, the settlement apply only to the DFS Fiduciary Duty Claims and the Trustee Claims (that is, the claims that involved allegations of wrongdoing) and not to the DFS Claw Back Claim.  If Navigators and DFS are incorrect and the DFS Claw Back Claim is covered by the Navigators Policy, then that claim was released by the

settlement, a conclusion that is in tension with the state court's order requiring Dr. Desai to make the Claw Back Payment. Further complicating matters is the fact that Dr. Desai did not raise the release as a defense in the state court action on the DFS Claw Back Claim. *See, e.g.*, Dkt. 50 at 11, 13; Dkt. 51 at 14-15.

In any event, after Navigators settled with DFS and the Trustee, Dr. Desai settled his lawsuit with RSUI. Dkt. 52-1 ¶ 28. Although that settlement agreement is not in the record, Dr. Desai has averred that "no further benefits are available under the RSUI Policy." *Id.* ¶ 28. Regardless of the terms of the settlement agreement, he takes the position that the RSUI Policy has been exhausted—and, thus, the Navigators Policy has been triggered—because RSUI paid out $4,532,322.30 and other expenditures bring the total outlay over $5 million. Dkt. 52 at 20-21.[9]

At some point, Dr. Desai sought coverage from Navigators for the DFS Claw Back Claim. Dkt. 17-6. In October 2017, Navigators denied coverage for several reasons, including that "the recovery of monies one is not entitled to retain as a matter of law represents an uninsurable disgorgement, not damages that might otherwise be subject to insurance coverage." *Id.* at 2. Navigators also took the position that the DFS Claw Back Claim did not involve a "Wrongful Act" as

_____

[9] As noted above, Navigators disputes that the RSUI Policy has been exhausted, but that dispute is not material to the Court's decision; thus, the Court assumes that the RSUI Policy has been exhausted.

required for coverage under the terms of the Navigators Policy. *Id.* Finally, it contended that the Illegal Advantage Exclusion applied. *Id.*

E.     Instant Lawsuit

On June 5, 2018, Dr. Desai filed a lawsuit in state court against Navigators alleging breach of contract and seeking a declaratory judgment. Dkts. 1-1 and 1-2. Navigators removed the case to this Court under the Court's diversity jurisdiction. Dkt. 1. In his amended complaint (Dkt. 17), Dr. Desai seeks a declaratory judgment that Navigators is obligated to defend him against the DFS Claw Back Claim, indemnify him for fees incurred in defending against that claim, and indemnify him for any amounts he is required to pay as part of a judgment in the state court action on that claim (*id.* at 11-14). He also alleges that Navigators breached the Navigators Policy when it refused coverage for the DFS Claw Back Claim. *Id.* at 14-15.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007) (citation omitted). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

The parties have filed cross motions for summary judgment. As noted above, there is coverage under the Navigators Policy only if there has been a "Claim" for a "Wrongful Act" and an insured person is legally obligated to pay a "Loss." The parties agree that the DFS Claw Back Claim is a "Claim" within the meaning of the policy but dispute whether it is a claim for a "Wrongful Act" and whether Dr. Desai was obligated to pay a "Loss." Navigators also contends that, even if the DFS Claim was a claim for a "Wrongful Act" that resulted in a "Loss," the Illegal Advantage Exclusion applies—a contention that Dr. Desai disputes. In addition, Navigators and DFS argue that the Court should abstain from hearing this dispute.

Under Florida[10] law, the interpretation of an insurance policy is a question of law to be decided by the Court. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015) (citation omitted). Insurance contracts are construed according to the plain language of the policy. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citations omitted). Ambiguities are construed against the insurer and in favor of coverage. *Id.* Although ambiguous provisions are construed in favor of coverage, "to allow for such a construction the provision must actually be ambiguous," *id.*, meaning that it is

---

[10] The parties agree that Florida law governs. That appears to be consistent with the terms of the policies at issue. *See* Dkt. 17-2 at 32.

"susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage," *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (internal quotation and citation omitted).  If a policy provision is clear and unambiguous, "it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc.*, 913 So. 2d at 532 (quotation and citation omitted).  The insured bears the burden of proving a claim within coverage, and the insurer then must prove that an exclusion to coverage applies.  *Amerisure Ins. Co. v. Auchter Co.*, No. 3:16-cv-407-J-39JRK, 2017 WL 4862194, at *10 (M.D. Fla. Sept. 27, 2017) (citations omitted).

Upon review, and for the reasons discussed below, the Court declines to abstain from hearing this dispute.  It also concludes that the Illegal Advantage Exclusion applies and that the DFS Claw Back Claim was not a claim for a "Wrongful Act" within the meaning of the relevant policy language.  Because the Illegal Advantage Exclusion applies and there was no "Wrongful Act," there is no coverage for the DFS Claw Back Claim and no duty to defend or indemnify Dr. Desai.  Accordingly, Navigators's motion for summary judgment is due to be granted and Dr. Desai's motion for summary judgment is due to be denied.

A.      Abstention

Navigators and *amicus curiae* DFS contend that the Court should abstain from hearing this dispute, arguing that, because "Dr. Desai was released by DFS for all

claims subject to coverage under the Navigators Policy, a determination by this Court in this action will directly affect the assets at issue in the Claw Back Claim." Dkt. 50 at 11. DFS takes that argument one step further and argues that Dr. Desai is seeking to make a "collateral attack" on the state court judgment in this action. Dkt. 51 at 14. Essentially, Navigators and DFS contend that a finding of coverage by this Court will set off a domino effect: If this Court finds that the DFS Claw Back Claim is covered, then Navigators will have to reimburse Dr. Desai for the Claw Back Payment. If that happens, then Navigators will sue DFS for breach of contract because DFS continued to press the DFS Claw Back Claim even though it was covered by the Navigators Policy and—thus—released by their settlement agreement. If Navigators wins that lawsuit, DFS will have to reimburse Navigators for the amounts it paid to Dr. Desai. This, according to Navigators and DFS, will undermine the state court proceedings because Dr. Desai did not raise the potential release of the DFS Claw Back Claim (via the settlement) as a defense in that action. *See, e.g.*, Dkt. 51 at 3-4, 14-15, 18.

As stated at the hearing, the Court declines to abstain. The abstention concerns of DFS and Navigators largely relate to what will happen if this Court finds that there is coverage for the DFS Claw Back Claim.[11] Those concerns are mooted because, as discussed below, the Court finds that the DFS Claw Back Claim is not covered by the

---

[11]The Court need not reach this issue but also notes that making the abstention argument puts Navigators in the unusual position of having removed a case to federal court only to insist that the federal court should abstain from hearing the case.

Navigators Policy.  Moreover, the cases that Navigators relies on in support of

abstention—*Florida Department of Financial Services v. General Reinsurance Corp.*,

No. 4:08cv443-WS, 2009 WL 10673255 (N.D. Fla. Feb. 2, 2009), and *Sabato v.*

*Florida Department of Insurance*, 768 F. Supp. 1562, 1564 (S.D. Fla. 1991)—are

distinguishable  because they involved direct challenges to the state court's exclusive

authority to preside over a delinquency proceeding and marshal the assets of an

insolvent insurer.  In *General Reinsurance Corp.*, after DFS filed a case to recover

allegedly improper preferential transfers made by an insurer in receivership, the

recipients of the transfers removed the case to federal court.[12]  2009 WL 10673255, at

*1.  This deprived the Circuit Court of Leon County of its exclusive jurisdiction to

decide whether the transfers were proper.[13]  In *Sabato*, DFS sent letters demanding

that the recipients return funds to an insurer in receivership.  The recipients of the

letters then filed a federal court declaratory judgment action seeking a declaration that

the transfers were proper and continued to litigate the federal suit after DFS filed state

---

[12] *General Reinsurance Corp.* is particularly inapposite because it held that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, caused Florida's Insurers Rehabilitation and Liquidation Act to preempt the federal removal statute, thereby requiring the case to be remanded to state court.  2009 WL 10673255, at *4.  If *General Reinsurance Corp.* were on point, it would require the Court to remand this action to state court, which is presumably not what Navigators—as the removing party—wants the Court to do.

[13] *See* Fla. Stat. § 631.021(6) ("[T]he Circuit Court of Leon County shall have exclusive jurisdiction with respect to assets or property of any insurer subject to [delinquency] proceedings and claims against such insurer's assets or property.").

court actions in accordance with the demand letters.[14] 768 F. Supp. at 1564. This case does not involve such a direct challenge to state court delinquency proceedings. Dr. Desai did not remove the state court action on the DFS Claw Back Claim to this Court or seek a declaratory judgment that he should be able to retain the $2,537,580. Instead he is attempting to force Navigators to reimburse him for the money he has paid to DFS and his defense costs for defending against the DFS Claw Back Claim. This case also does not require the Court to consider whether the state court was correct when it determined that the payments to Desai were voidable. Moreover, the "domino effect" theory is speculative and does not constitute a reason for this Court to abstain.[15] Accordingly, the Court will not abstain from hearing this matter.

---

[14] To the extent that Navigators and DFS are arguing that this case—like *Sabato*—is a candidate for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ("*Burford* abstention"), *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*" abstention), and/or *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River* abstention"), the Court disagrees. This case does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" or threaten to "disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern," as required for *Burford* abstention. *Siegel v. LePore,* 234 F.3d 1163, 1173 (11th Cir. 2000) (citations omitted). And, as explained *infra*, the relief sought by Dr. Desai would not interfere with the ongoing state court liquidation proceedings, as required for *Younger* abstention. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1275 (11th Cir. 2003). This case and the state court case also do not share "substantially the same parties and substantially the same issues" as required for *Colorado River* abstention. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Again, as explained *infra*, neither Navigators nor DFS has offered authority showing that Dr. Desai's waiver of the settlement defense binds him as against Navigators or that this Court's ruling on coverage would bind DFS in state court.

[15] On this point, the federal abstention argument would not have been available to Navigators if there were no federal diversity jurisdiction (and had Navigators not removed), but the same "domino effect" problem would have remained even if this case were litigated in Pinellas County, where it was originally filed. This suggests that the problem here is not one of a federal

B.    Illegal Advantage Exclusion

With respect to the merits, the Court concludes that the Illegal Advantage Exclusion applies, thereby removing the DFS Claw Back Claim from coverage.   As noted above, the Illegal Advantage Exclusion provides that the insurer "shall not be liable to make any payment of Loss in connection with any Claim made against any Insured . . . [b]ased upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining or any profit or advantage to which an Insured was not legally entitled." Dkt. 17-2 at  26.  It also provides that the exclusion "shall not apply unless a judgment or other final adjudication adverse to any Insured in the Claim shall establish that such Insured gained profit or advantage to which such Insured was not legally entitled." *Id.*

Here, it is undisputed that Dr. Desai was not legally entitled to the $2,537,580 in payments after DFS voided the transfer and demanded repayment.  It is also undisputed that the state trial court's grant of "summary final judgment" requiring Dr.

---

court interfering with state court matters (which might require abstention).  Instead, it suggests that the real problem is the risks associated with the decision of Navigators and DFS to enter into a settlement of claims "subject to indemnification" without defining which claims were specifically covered by the settlement or obtaining a judicial determination as to whether the DFS Claw Back Claim was covered.  While Navigators and DFS posit a scenario whereby DFS could be required to pay Navigators an amount equal to the Claw Back Claim Payment, neither side has cited any authority to support the idea that those funds would come from the estate of the Receivership Entities—as to opposed to DFS's coffers.  Thus, they have not shown that this action has the potential to impact the receivership action.  They also cite no authority for the proposition that Dr. Desai's waiver of the settlement defense in the state court action (to which Navigators was not a party) is somehow binding on him as against Navigators and in this action (to which DFS is not a party).  Notably, Navigators raised no such estoppel defense in its answer.  Dkt. 33.

Desai to return the $2,537,580 was a "judgment or other final adjudication adverse to any Insured" sufficient to trigger the Illegal Advantage Exclusion. Dr. Desai, under oath, describes it as a "final judgment." Dkt. 52-1 ¶ 26; *see also* Dkt. 52 at 17-19 (arguing only that that the DFS Claim does not involve the gaining of any "profit or advantage"); Dkt. 59 at 8-9 (same); Dkt. 62 at 8-9 (same); *see also Pac. Ins. Co. v. Gen. Dev. Corp.*, 28 F.3d 1093, 1096-97 (11th Cir. 1994) (court order to pay defense costs until "fraud, dishonesty or criminal acts are established by a judgment" expired on date insureds were convicted of fraud and conspiracy); *Unencumbered Assets, Trust v. Great Am. Ins. Co.*, 817 F. Supp. 2d 1014, 1032 (S.D. Ohio 2011) (insurance policy exclusion requiring a "judgment or other final adjudication" was triggered after insured was convicted and sentenced in trial court notwithstanding pendency of appeal).

Dr. Desai argues, however, that the exclusion does not apply because the $2,537,580 in funds at issue was not a "profit" or "advantage" within the plain language of the exclusion and because the Illegal Advantage Exclusion does not apply to claims involving compensation. The Court disagrees. First, Dr. Desai's claim that payments totaling $2,537,580 were not a "profit" or "advantage" is unconvincing. As Dr. Desai's motion for summary judgment acknowledges, Black's Law Dictionary defines the term "advantage" as a "benefit or gain"—a description

that plainly applies here.  Dkt.  52 at 18 (quoting Black's Law Dictionary (10th ed. 2014)).

Second, Dr. Desai's argument that the Illegal Advantage Exclusion does not apply to claims involving compensation is unavailing.  He argues that the Illegal Advantage Exclusion cannot apply to compensation because—if it did—the Illegal Remuneration Exclusion (which applies to a loss related to the "granting of any remuneration to any Insured, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal") would be superfluous.  Dkt. 52 at 18-19; *see also* Dkt. 17-2 at 26.  He does not explain, however, why—on the facts of this case[16]—the Illegal Remuneration Exclusion would be superfluous.  An employee can be "not legally entitled" to compensation in situations other than a case where the stockholders or Board of Directors failed to give approval for this compensation.  Indeed, this case—in which the $2,537,580 was approved by the Board of Directors but subsequently voided by DFS—is precisely such a case.

Rather than explain his argument that the Illegal Remuneration Exclusion is superfluous on the facts of this case, Dr. Desai relies on *International Insurance Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989).  In *Johns*, the insurance policy at issue

---

[16] While the Illegal Remuneration Exclusion might be superfluous in a case where the insurance company contended that the compensation was without shareholder approval, Navigators does not take that position in this case.

included an exclusion similar to the Illegal Advantage Exclusion (referred to as

"paragraph 5(b)") and an exclusion similar to the Illegal Remuneration Exclusion

(referred to as "paragraph 5(c)").  According to Dr. Desai, the *Johns* court

"recognized that if the illegal profits exclusion were to apply to claims involving

compensation then the remuneration exclusion would be rendered superfluous" and

"concluded that the illegal profits exclusion does not apply to claims [for] illegal

compensation."  Dkt. 52 at 19.  That description of *Johns* is not correct.  In *Johns*,

the Eleventh Circuit concluded that the exclusion for illegal profit (paragraph 5(b))

was inapplicable on the facts of the case, reasoning:

> The exclusions in both paragraphs 5(b) and 5(c), therefore, exclude
> remuneration illegally received *without required shareholder approval*.
> This "double" exclusion renders paragraph 5(c) meaningless, for a
> court would treat all remuneration received *without required
> shareholder approval* as illegal personal profit.  A court, therefore,
> would exclude the loss under paragraph 5(b), and never consider
> paragraph 5(c).  Paragraph 5(c) alone concerns remuneration that is
> illegal *because of a lack of shareholder approval*.  In these situations, a
> court should not consider the terms of paragraph 5(b).  This
> construction effectuates each provision, and, consequently, is fully
> consistent with the intentions of the contracting parties.

*Id.* at 1456-57 (citation omitted) (emphasis added).  This does not, as Dr. Desai

contends, amount to a ruling that all claims for compensation (including

compensation that had the appropriate approvals—like the compensation Dr. Desai

received—but was subsequently voided) must be considered under the Illegal Remuneration Exclusion.[17]

Because the Illegal Advantage Exclusion applies, there is no coverage for the DFS Claw Back Claim, and Navigators was not obligated to indemnify or defend Dr. Desai.  See Dkt. 17-2 at 26 ("The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured [that falls within the Illegal Advantage exclusion]."); *id.* at 28 ("It shall be the . . . duty of the Insurer to defend any Claim against the Insured for which coverage applies under this policy . . . ."); *see also Am. Cas. Co. of Reading, Pa. v. Superior Pharmacy,* LLC, 86 F. Supp. 3d 1307, 1311-12 (M.D. Fla. 2015) (citations omitted) (where a policy coverage exclusion applies, there is no duty to defend).  Accordingly, Navigators's motion for summary judgment is due to be granted.

C.     Wrongful Act

In addition, even if the Illegal Advantage Exclusion did not apply, summary judgment is warranted because the DFS Claw Back Claim was not a claim for a "Wrongful Act" within the meaning of the relevant policy language.  As noted above, for Navigators to have an obligation to pay, there must be a "Claim for a Wrongful Act."  Dkt. 17-2 at 23.  A Wrongful Act is defined as

---

[17] The Court also notes that *Johns* is distinguishable because the Eleventh Circuit found that the payments at issue were not illegal.  Thus, the exclusion for claims related to an illegal profit or advantage did not exclude the loss at issue.  *Johns,* 874 F.2d at 1457-70.

any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by:

1. An Insured Person acting in his or her capacity as such and on behalf of the Insured Organization or any matter claimed against them solely by reason of their status as an Insured Person; or

2. The Insured Organization.

*Id.* at 26.  Here, the DFS Claw Back Claim was not a claim for an "act, error, omission, misstatement, misleading statement, neglect or breach of duty" by Dr. Desai or the Insured Organization (UHCG and its subsidiaries).  Instead, the DFS Claw Back Claim was made because the Receivership Entities entered delinquency proceedings within one year of the transfer of $2,537,580 in compensation to Dr. Desai and the Receiver voided those transfers under Florida law, thereby depriving Dr. Desai of his right to the funds.  There simply was no "act, error, omission, misstatement, misleading statement, neglect or breach of duty" by Dr. Desai or the Insured Organization that triggered the claim.  Thus, under the plain language of the policy, the DFS Claw Back Claim was not a claim for a "Wrongful Act," and the policy does not provide coverage.

The state court did not enter the adverse final judgment for any act of Dr. Desai or the Insured Organization but simply because, upon the filing of the delinquency proceedings and receiver's demand, Dr. Desai was automatically divested of the money as a matter of law.  This judgment was not because of any act Dr. Desai or the

Insured Organization did; it was simply because upon the receiver's demand Dr. Desai was deemed to be holding property belonging to someone else.

Dr. Desai's arguments to the contrary are unavailing.[18] First, Dr. Desai argues that either his approval of the $2,537,580 in payments to himself (in his capacity as Chairman of the Board of AMC) or his receipt of those payments (which were made as compensation for services rendered in his capacity as a director and officer of UHCG) qualify as the "acts" of an Insured Person acting in his capacity as an Insured Person. Dkt. 52 at 15. Second, Dr. Desai argues that AMC's payment of the $2,537,580 to Dr. Desai within one year prior to the commencement of liquidation proceedings qualifies as an "act" of the "Insured Organization." *Id.* at 14. For both, Dr. Desai notes that the definition of Wrongful Act does not require any alleged misconduct, but instead simply requires an "act" by an Insured Person or an Insured Organization, which he says exists here. *Id.* at 7-8.

But even assuming that approval, payment, or receipt of the $2,537,580 in compensation qualifies as the "act" of an Insured Person or an Insured Organization

---

[18] The Court notes that Dr. Desai's argument on this point is in tension with the argument his attorney made at oral argument with respect to whether the Claw Back Payment was a "Loss." In arguing that it was a "Loss," Dr. Desai's attorney emphasized that the DFS Claw Back Claim did not include any allegations that Dr. Desai engaged in wrongdoing, which arguably distinguished this case from the cases relied upon by Navigators and DFS. Thus, Dr. Desai simultaneously argues that he engaged in no wrongdoing, but there was still a "Wrongful Act" for purposes of the policy. The Court need not resolve this tension to decide the case.

needed to constitute a "Wrongful Act" within the meaning of the policy[19] and that no misconduct is required, Dr. Desai's argument still fails because the policy requires more than just a "Wrongful Act" for there to be coverage. Instead, the plain language of the policy provides for coverage only when there has been a "Claim *for* a Wrongful Act." Dkt. 17-2 at 23 (emphasis added). Dr. Desai has failed to explain how the DFS Claw Back Claim is a claim "for" the posited Wrongful Acts (approval, payment, and receipt of the $2,537, 580). Under Florida Statutes §§ 631.261(1)(b) and 631.154(1) (which are the basis for the DFS Claw Back Claim), there was nothing problematic about the payments to Dr. Desai at the time they were approved, made, or received.[20] Dr. Desai lost his right to those payments only after: (1) the Receivership Entities entered delinquency within a year of the payments; and (2) the Receiver voided the transfers and demanded repayment. As such, the DFS Claw Back Claim is simply not a claim "for" a Wrongful Act. Dr. Desai has not cited any authority to the contrary.[21]

---

[19] The parties disagree about whether Dr. Desai's receipt of the compensation was done "in his . . . capacity as [an Insured Person] and on behalf of the Insured Organization," as required under the definition of Wrongful Act. Dkt. 17-2 at 26. The Court need not resolve this dispute but notes that it is skeptical that Dr. Desai was "acting on behalf of the Insured Organization" when he accepted his paychecks.

[20] Of course, they might have been problematic under other legal theories—such as the claims for breach of fiduciary duty pressed by the Receiver in the DFS Fiduciary Duty Claims. But those claims are not at issue in this lawsuit. Notably, Navigators settled those claims (paying out $1.8 million to do so).

[21] Dr. Desai's reliance on the language of the state trial court's judgment is not persuasive. Dkt. 52 at 16. It is true that the state court found that Dr. Desai was compensated as a director and officer of the Receivership Entities and that the payments were made within one year of the delinquency proceedings. Dkt. 52-11 at 7. But those findings simply show that the payments could be voided under Florida law. They do not show that the DFS Claw Back Claim was "for" the payment or receipt of the funds. If anything, the state trial court judgment emphasizes that it

Instead, he attempts to rely on the language of the DFS Claw Back Claim itself, noting that the DFS Claw Back Claim letter "specifically stated that the DFS Claim was asserting claims 'against the former officers and directors of the Companies for wrongful acts . . . in their respective capacities as such.'" Dkt. 52 at 15 (quoting Dkt. 52-7 at 1). But that argument ignores the rest of the sentence, as well as context of the letter and the larger picture of DFS's actions against Dr. Desai as receiver of the Receivership Entities. The sentence actually reads, in its entirety:

> It is the Receiver's intention to assert claims against the former officers and directors of the Companies for wrongful acts, including but not limited to breach of duty, neglect, error, mistaken statement, misleading statement, omissions or other wrongful acts by each of these directors and/or officers, jointly and/or severally in their respective capacities as such, resulting in injury in excess of $5 million.

Dkt. 52-7 at 1. As explained above, DFS (as the Receiver of the Receivership Entities) made two claims against Dr. Desai—the DFS Claw Back Claim and the DFS Fiduciary Duty claims. The DFS Claw Back Claim letter also makes it clear that DFS was investigating additional claims against Dr. Desai and others. *See, e.g.*, *id.* at 2 ("The claims for excess compensation and bonuses total $4,488,760 . . . . The Receiver's investigation is ongoing. To date, this investigation has revealed that the directors and/or officers may have breached additional duties of a fiduciary nature,

---

was the institution of the delinquency proceedings that triggered the DFS Claw Back Claim, not an act by Dr. Desai or the Insured Organization. His reliance on the Illegal Remuneration Exclusion to show that receipt of compensation can be a "Wrongful Act" is also misplaced. *See* Dkt. 59 at 8. The question is not whether receipt of compensation can be a "Wrongful Act" under the policy but whether the DFS Claw Back Claim is a claim "for" such a Wrongful Act.

causing the Companies to suffer further significant damages in excess of the $5,000,000 primary policy limits.").  Read in context, then, it is clear that the DFS Claw Back Claim letter was referring to the broader set of allegations against Dr. Desai and not asserting that the DFS Claw Back Claim on its own qualified as a claim for a "Wrongful Act" within the terms of the relevant policy language.

Because the DFS Claw Back Claim was not a "Claim for a Wrongful Act" within the meaning of the Navigators Policy, there was no coverage for it, and Navigators has neither a duty to defend nor a duty to indemnify Dr. Desai for that claim.  *See* Dkt. 17-2 at 23 ("[I]f a Claim for a Wrongful Act is . . . made against any Insured Person . . . , the Insurer will pay . . . all Loss such Insured Person is legally obligated to pay . . . ."); *id.* at 28 ("It shall be the . . . duty of the Insurer to defend any Claim against the Insured for which coverage applies under this policy . . . ."); *see also WPC Indus. Contractors, Ltd. v. Amerisure Mut. Ins. Co.*, 720 F. Supp. 2d 1377, 1380 (S.D. Fla. 2009) (citation omitted) ("[T]here is no duty to defend where the complaint shows either that there is no coverage or that an exception applies.").[22] Thus, Navigators's motion for summary judgment is due to be granted.

---

[22] Because the Court concludes that the Illegal Advantage Exclusion applies and that the DFS Claw Back Claim was not a claim for a "Wrongful Act," it need not reach the parties' alternative arguments about whether the Claw Back Payment was a "Loss" within the meaning of the policy.

## IV.    CONCLUSION

For the reasons stated above, the Court grants Defendant Navigators Insurance Company's motion for summary judgment (Dkt. 49) and denies Plaintiff Akshay M. Desai, M.D.'s motion for summary judgment (Dkt. 52).

**DONE AND ORDERED** at Tampa, Florida, on July 12, 2019.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO:**</u>
Counsel of Record